# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SANDRA LAWRENCE,** ) | |
|     **PLAINTIFF,** ) | |
| **VS.** ) | **4:15-cv-1028-JHH** |
| **CAROLYN W. COLVIN, ACTING** ) **COMMISSIONER OF** **SOCIAL SECURITY,** ) | |
|     **DEFENDANT.** ) | |

## MEMORANDUM OF DECISION

Plaintiff Sandra Lawrence brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (SSDI) and Supplemental Security Income (SSI) under Riel II and Title XVI fo the Social Security Act. For the reasons set forth below, the decision is due to be affirmed.

**I. Proceedings Below**

Plaintiff filed her application for SSDI and SSI benefits on January 9, 2012, alleging a disability onset date of October 4, 2011. (R. 147-59.)  After the application was denied initially on April 4, 2012, Plaintiff requested and received a

hearing before an Administrative Law Judge (ALJ). (R. 82-88, 96-98). The video hearing was held on August 21, 2013, with Plaintiff appearing in Anniston, Alabama and the ALJ presiding over the hearing from Montgomery, Alabama. (R. 12). Both Plaintiff and Vocational Expert William F. Green testified at the hearing. (R. 37-60).

In his November 22, 2013 decision, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and thus ineligible for benefits. (R. 29-24, 29-60). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 1-3). After the Appeals Council denied Plaintiff's request for review (R. 1-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

At the time of Plaintiff's alleged onset of disability, she was fifty-six years of age and had a high school education. (R. 9, 147, 153). Plaintiff's past relevant work experience was as a marketing sales manager and graphic designed. (R. 184, 194-97). According to Plaintiff, she has been unable to engage in substantial gainful activity since October 4, 2011, due to chronic obtrusive pulmonary disease with ongoing tobacco use, questionable fibromyalgia, arthritis, possible diffuse, particularly left shoulder; and questionable Hepatitis C.

At the August 21, 2013 hearing, Plaintiff testified that she began having issues with her back, neck and knees around 2005. (R. 18). She began working at Walmart

in April 2011, where she worked in the jewelry, shoe and lingerie department, but she left the job in September 2011 because the job was physically demanding and she was unable to do the job. (R. 18). Her attorney stated that Plaintiff was diagnosed with depression and anxiety, but she has not sought treatment for those impairments. (R. 18).

Plaintiff testified that she used drugs (cocaine) recreationally in the 1979s, 1980s and 1990s, but stopped using in 1993 after she got a divorce. (R. 18). Although her physicians have repeatedly instructed her to stop smoking, Plaintiff testified that she smokes a pack of cigarettes a day. Plaintiff has trouble breathing and she uses two inhalers each morning. (R. 19). As far as her daily activities, Plaintiff stated that she is able to dress, have and eat, but she has trouble washing her own hair. (R. 18). She stated that she can dust, mop, sweep and do laundry at a slow pace. (R. 18). She is able to drive, but only for short distances because it hurts her hands. (R. 18). She watches television and gets on the internet in her spare time. (R. 18). Plaintiff also reads, but she does less of this because it hurts her hands to hold a book and sitting for long periods of time hurts her back, legs and hips. (R. 18). She stated that she has difficulty grasping and turning doorknobs, writing with a pen or a pencil and typing on a keyboard because it hurts her hands. (R. 18). She is no longer able to keep her grandchild, entertain, shop or work in her yard. (R. 18). She

3

is able to walk her dog for short distances, but stated that she has developed a limp on her left leg from the pain in her left leg, hip and back. (R. 18). She is unable to sleep and constantly stays tired. (R. 18).

As far as her pain, Plaintiff stated that it began about five years ago and has gotten progressively worse, with the pain in her legs, hands and back being constant and the pain in her arms, neck, shoulders, hips and feet being intermittent. (R. 18). She stated that sitting for too long, bending, squatting, walking too much, driving and lying down makes her pain worse, and that the pain last for hours to sometimes days at a time. (R. 18). To manage her pain, she takes Norco and Meloxicam, which relieve the pain for two to three hours, but have side effects of drowsiness and constipation. (R. 18). She also uses Bio Freeze, takes hot showers or bath, gets massages or changes positions to relieve her pain. (R. 18). Plaintiff stated that sometimes she gets chills and feels faint from the pain. (R. 18).

## II. ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working ("Step One"). Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities ("Step Two"). Third, the Commissioner determines whether claimant's

impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations ("Step Three"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work ("Step Four"). The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work ("Step Five"). In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2013. (R. 14, No.1), and that she has not engaged in substantial gainful activity since her alleged onset of disability on October 4, 2011. (R. 14, No. 2). The ALJ found that, during the relevant time period, Plaintiff has the following severe combination of impairments:" chronic obstructive pulmonary disease with ongoing tobacco abuse; questionable fibromyalgia; arthritis, possibly diffuse, particularly left shoulder; and questionable hepatitis C." (R. 14, No. 3). Nevertheless, he determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 16, No. 4). According to the ALJ, Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (R. 23.)

Based upon his review of the record, the ALJ concluded that that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) that entailed the following:

- Sitting for at least three hours without interruption and a total of six hours during an eight-hour workday;
- Standing and /or walking up to one hour each without interruption and a total of six hours during an eight-hour workday;
- Frequently using her left, non-dominant upper extremity for reaching in all directions;
- Frequently using her lower extremities for pushing, pulling and in the

>    operation of foot controls;
> - No climbing ladders, ropes, or scaffolds;
> - Rarely climbing stairs (up to one hour total over the course of an eight-hour workday)
> - Occasionally climbing ramps;
> - Frequently balancing and stooping;
> - Occasionally crouching and kneeling;
> - No crawling;
> - Occasionally working in extreme temperatures;
> - Frequently working in wetness and humidity;
> - Frequently working while subject to vibration;
> - Frequently working while exposed to fumes, odors, dusts, and gases;
> - No working in poorly ventilated areas;
> - No operating hazardous machinery;
> - No working at unprotected heights; and
> - Frequently operating motorized vehicles.

(R. 17). Based on the testimony of the vocational expert and her RFC, the ALJ determined that the plaintiff was unable to return to any of her past relevant work as a marketing sales manager and graphic designer. (Tr. 23). However, considering Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found that there are jobs in the national economy that exist in significant numbers that the plaintiff can perform. (R. 23). Therefore, the ALJ found that the plaintiff was not under a disability, as defined by the Act, from the alleged onset date of October 4, 2011 through the dat of his decision. (R. 24).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of

the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. Specifically, Plaintiff argues that the ALJ committed reversible error by not properly evaluating her subjective complaints of disability. (Doc. # 10 at 3-9.)

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.   Discussion**

Plaintiff contends that when determining her ability to work, the ALJ failed to appropriately evaluate her alleged pain and subjective symptoms in light of the "pain standard." (Doc. # 10 at 3-9). It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from

9

that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a claimant's pain testimony, she must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. See 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." Marbury, 957 F.2d at 839.

Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, no

"magic language" is required and no case citations are mandatory, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (holding that an ALJ's mere reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard).

The court disagrees with the argument presented by Plaintiff. It is entirely evident from the ALJ's opinion that Plaintiff's pain complaints were properly evaluated under Eleventh Circuit law. In accordance with both the initial and secondary inquiries required for the assessment of subjective complaints, the ALJ found that Plaintiff's medically determinable impairments could be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible. (R. 23). In so concluding, the ALJ not only thoroughly recited the medical evidence of record (as outlined in detail above and incorporated by reference here), but he specifically analyzed why Plaintiff's complaints of pain are simply not consistent with that evidence. (R. 19-23, 277, 285, 301-02, 307, 315, 317).

Plaintiff argues that the ALJ improperly relied upon evidence that pre-dated her alleged onset date of disability to explain his credibility findings. Specifically, Plaintiff contends that the ALJ "ignored" the longitudinal medical record, which documents her consistent complaints of treatment and her debilitation pain. (Doc. #

10 at 5-6.) The court disagrees. Although the ALJ discussed the medical documentation that pre-dated her alleged onset date and noted that the evidence did not support her inability to work, he also thoroughly discussed and considered the medical evidence after Plaintiff's alleged onset date and specifically found that the evidence did not support her subjective complaints of pain or her allegations of disability. (R. 21). Additionally, the ALJ used some of the evidence that pre-dated her alleged onset date to compare it with the evidence after her alleged onset to show that Plaintiff's condition had not become disabling after her alleged onset date.[1] (R. 21).

Plaintiff also contends that there is no evidence that her physicians questioned her subjective complaints of sever pain and that her physicians prescribed her strong narcotic medication to relieve her pain. (Doc. #10 at 5, 8). While this may be true, subjective complaints of pain alone are not enough to establish disability. Rather, medical signs or laboratory findings must show that there is a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. See 20 C.F.R. §§ 404.1529(a) & 416.929(a). The ALJ recognized that Plaintiff

---

[1] Plaintiff's argument to the contrary (Doc. #10 at 5-6) is not supported by the record. There is no evidence that supports escalation of Plaintiff's pain, and, although she did receive severe diagnoses, a diagnosis in and of itself, says very little about the severity of an impairment. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir 2005).

complained of pain all over her body, but noted that the clinical findings upon examination did not support her complaints. (R. 21-22, 285, 300-02, 315, 317). Additionally, Plaintiff did not cite any authority to establish that merely being prescribed pain medication supports complaints of disability. *Cf. Laurey v. Comm'r of Soc. Sec.*, 2015 WL 7729455, *10 (11th Cir. Dec. 1, 2015) (finding ALJ's credibility finding was supported by substantial evidence based on part on claimant's conservative treatment which consisted of pain medication and muscle relaxers).

Plaintiff's reliance on the application for Disability Access Parking Privileges, completed by Dr. Huang, where he noted that Plaintiff was severely limited in her ability to walk due to an arthritic, neurological or orthopedic condition (R. 334) is also unpersuasive. (Doc. #10 at 8). The ALJ considered this evidence and concluded that the application was entitled to little probative value given Dr. Huang's examination findings and the record as a whole. (R. 23). Indeed, Dr. Huang's examination consistently showed no significant abnormalities, (R. 205, 307, 315, 317), and Dr. Jariwala's examination revealed normal gait, no motor or sensory deficits, normal reflexes, no neurological defects, full strength of the muscle groups, and the ability to walk on her heels and toes, and squat and arise without difficulty. (R. 303). Thus, the application was properly given little weight in the face of the other medical evidence.

For all of these reasons, the ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence.

## VI. Conclusion

In summary, the court concludes that the determination of the ALJ that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The final decision of the Commissioner, therefore, is due to be affirmed. A separate order will be entered.

**DONE** this the __26th__ day of February, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE